## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **17-CR-643-5** |
| **v.** | |
| **AUSTIN MANSUR** | **Hon. Matthew F. Kennelly** |

### DEFENDANT AUSTIN MANSUR'S SENTENCING MEMORANDUM

On March 11, 2019, at a change of plea hearing before the Court, Defendant Austin Mansur pled guilty to one count of conspiracy to commit insider trading, in violation of Title 18, United States Code, Section 371. Defendant Austin Mansur, by and through counsel, respectfully submits this Sentencing Memorandum and appended letters to the Court to assist the Court in determining his sentence.

### PRELIMINARY STATEMENT

Mr. Mansur acknowledges that he broke the law and is genuinely remorseful. In addition to having pled guilty to a felony, he has accepted the offered terms of judgment pending in a civil action brought against him by the U.S. Securities & Exchange Commission ("SEC") and agreed to disgorge all ill-gotten gains plus prejudgment interest shortly after entry of the civil judgment. In short, Mr. Mansur has fully accepted responsibility for his actions in connection with this offense.

Mr. Mansur respectfully submits and requests that the Court not impose a Guidelines sentence if requested by the Government, but instead sentence Mr. Mansur to probation with conditions that satisfy the interests of justice. A non-Guidelines sentence of probation is sufficient to comply with the purposes and considerations set forth in 18 U.S.C. § 3553(a).

Notably, the U.S. Probation Office recommended such a sentence. On April 30, 2019, the Probation Office filed a thorough Presentence Investigation Report ("PSR") and Sentencing Recommendation ("Recommendation") recommending a non-Guidelines sentence of three years' probation, community service, $30,000 fine, $100 mandatory special assessment, and certain other conditions. In reaching its conclusion, the Probation Office explained not only that Mr. Mansur "has been extremely cooperative" and "fully admitted his actions," but also that a sentence of probation "reflects the seriousness of the offense, and meets the objectives of fair and just punishment." Recommendation, at 1-2. Mr. Mansur agrees.

First, a non-Guidelines sentence of probation reflects the nature and circumstances of the offense and the history and characteristics of the defendant. *See* 18 U.S.C. § 3553(a)(1). Mr. Mansur is a third-level remote tippee who received a tip about Life Time Fitness, Inc. ("Life Time") and traded on that information. Mr. Mansur had no direct contact with either the insider at Life Time or with the first-level tipper/tippee, Bret Beshey. Mr. Mansur had no prior discussions with the person who tipped him, Peter Kourtis, about obtaining inside information. Rather, Mr. Kourtis spread the information about Life Time to Mr. Mansur unprompted. Mr. Mansur did not investigate the tip he received or do anything to confirm its veracity—he just purchased a modest amount of options and stock within days of the tip. The conduct here did not involve other companies or other instances of trading on information related to Life Time. Rather, it was a sole occurrence.

Mr. Mansur has no prior criminal history, no history of past trading misconduct, and nothing in his character and background suggests that Mr. Mansur will go through the justice system as a criminal defendant ever again. In fact, based on the statements of individuals submitted to the Court on behalf of Mr. Mansur, it is clear that Mr. Mansur is highly regarded in

the business community. These family, friends, and business colleagues describe a man dedicated both to his career and to his family and for whom the conduct in this case is highly out-of-character. Those individuals further stress that not only has Mr. Mansur taken ownership of his conduct in this matter, but also that Mr. Mansur deeply regrets his mistake and will not recidivate. Put differently, for Mr. Mansur, this one instance of trading on inside information constitutes "aberrant behavior," as defined by the Guidelines. *See* U.S.S.G. § 5K2.20(b) ("The court may depart downward under this policy statement only if the defendant committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life.").

Second, a non-Guidelines sentence of probation reflects the seriousness of the offense and meets the objectives of fair and just punishment under 18 U.S.C. § 3553(a)(2). Again, Mr. Mansur was a remote tippee in an insider-trading scheme for which he did not seek out the information or engage in any significant planning. In fact, leading jurists in other jurisdictions routinely give defendants downward departures in insider-trading cases because the Guidelines are over reliant on gain/loss calculations in insider trading cases, leading to large sentence disparities based solely on the profit received without any connection to individual culpability or to an actual loss to a victim of the offense.

Third, pursuant to 18 U.S.C. § 3553(a)(6), a non-Guidelines sentence of probation will avoid unwarranted sentence disparities among defendants. In fact, non-cooperating defendants in insider-trading cases across the country who pled guilty with gains similar to Mr. Mansur are routinely sentenced to probation. And, among similarly situated remote-tippee co-defendants in

this case, all but one received deferred prosecution agreements.[1] The main difference between Mr. Mansur and those co-defendants was their cooperation with the government. That difference, however, is sufficiently accounted for by the fact that Mr. Mansur has pled guilty to a felony charge and the imposition of a three-year probationary term. Indeed, co-defendant Chasity Clark, who (1) did not cooperate with the government, (2) delivered money directly to the insider, (3) was a fugitive in Mexico for at least six months, and (4) was higher in the tippee chain than Mr. Mansur—she was a tipper in addition to a tippee—was sentenced to what amounts to a noncustodial sentence of time-served and one-year supervised release.

Finally, a sentence of probation is similar to what the Guidelines would dictate here. With a base level offense of eight under U.S.S.G. §§ 2X1.1(a) and 2B1.4(a) and an eight-level increase based on Mr. Mansur's gain under U.S.S.G. §§ 2B1.4(b)(1) and 2B1.1(b)(1)(E), Mr. Mansur's starting offense level is 16. However, it is uncontested that Mr. Mansur is entitled to a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a). And, as fully described below, Mr. Mansur is entitled to a four-level reduction for his minimal role in the offense under U.S.S.G. § 3B1.2(a).[2] Mr. Mansur's Total Offense Level is 10, therefore; which, with his Criminal History of Category I, results in a Guidelines range of 6 to 12 months within Zone B of the Sentencing Table. Under Zone B, a sentence of probation is authorized if "the court imposes a condition or combination of conditions requiring intermittent confinement,

---

[1]    The only other similarly situated remote tippee that did not receive pretrial diversion, co-defendant Eric Weller, went to trial and was found guilty by jury of one count of conspiracy and not guilty of three counts of securities fraud by insider trading. *See* Order (Apr. 16, 2019), ECF No. 254.

[2]    The only difference between Mr. Mansur's Guidelines calculation and that of the Probation Office is that the PSR provides for a two-level downward adjustment for a minor role in the offense instead of a four-level downward adjustment for a minimal role in the offense. The Probation Office "believe[s] the evidence presented indicates [Mr. Mansur] occupied a position within the conspiracy as a minor participant, when compared to the roles and actions of those codefendants above him, such as Bret Beshey and Shane Fleming; therefore, a two-level decrease is deemed applicable." PSR, at 7 (citing U.S.S.G. § 3B1.2(b)).

community confinement, or home detention." U.S.S.G. § 5B1.1(a). A sentence of three-years' probation, therefore, is not a material variance from the Guidelines calculated sentence.

## FACTS

The Indictment in this case alleges that beginning no later than February 2015, and continuing until at least in or about April 2015, Defendant Austin Mansur conspired with others known and unknown in a conspiracy to engage in insider trading in the publicly traded stock and stock options of Life Time. For illustrative purposes, below is a diagram provided by the government in their Statement of the Offense summarizing the flow of the material, nonpublic information among the nine defendants:[3]



The government's diagram makes clear that Mr. Mansur was a third-level remote tippee—the furthest tippee level from the source of the inside information—and that Mr. Mansur did not share the information with anyone else.

On or about February 24, 2015, Mr. Mansur learned from his long-time friend, co-defendant Peter Kourtis, that another company would acquire Life Time in short order and that the sale would cause Life Time's share price to increase. Plea Agreement ¶ 6 (Mar. 11, 2019), ECF No. 221. Mr. Kourtis explained to Mr. Mansur that the nonpublic information came from Mr. Kourtis' friend, co-defendant Bret Beshey. *Id.* Mr. Mansur had met Mr. Beshey previously

---

3   Government's Version of the Offense, at 2 (April 3, 2019).

through Mr. Kourtis. *Id.* Based on his discussions with Mr. Kourtis, including the specificity of the information, Mr. Mansur understood that the information about Life Time had ultimately come from an insider who was friends with Mr. Beshey and had improperly disclosed the inside information about Life Time's upcoming acquisition to Mr. Beshey in breach of duties of trust and loyalty that the insider owed to Life Time and its shareholders. *Id.* But, Mr. Mansur did not know the identity of the Life Time insider, did not seek out the information or engage in any significant planning related to the dissemination of the information, or share the information with anyone else.

Within days of receiving the information, Mr. Mansur traded. Mr. Mansur did not investigate the tip he received or do anything to confirm its veracity—he just purchased a modest amount of options and stock without further thought. Indeed, beginning on or about February 26, 2015, Mr. Mansur used approximately $30,841 to purchase approximately 465 out-of-the-money Life Time stock options and 250 shares of Life Time stock. *Id.*

Beginning on or about March 6, 2015, when news became public that two private equity firms were in advanced discussions to purchase all of Life Time's outstanding shares, the Life Time share price increased and Mr. Mansur began selling the Life Time securities he had purchased. *Id.* Mr. Mansur's profits totaled $133,326. *Id.* In or about April 2015, Mr. Mansur paid Mr. Kourtis approximately $1,000 in cash for the information. *Id.* Mr. Kourtis never told Mr. Mansur whether he shared any of the money paid to him by Mr. Mansur with either Mr. Beshey or the insider at Life Time. *Id.*

Since the Indictment, Mr. Mansur "has complied with all Court-ordered conditions of release." PSR, at 5. And, after Mr. Mansur's change of plea hearing on March 11, 2019, in the Probation Office's own words: Mr. Mansur "has been extremely cooperative with the probation

office, in the preparation of [the PSR], particularly as it relates to the documentation of his health issues, as well as the documentation of his personal net worth." Sentencing Report, at 1-2.

## DISCUSSION

**I. A Non-Guidelines Sentence of Probation is Sufficient to Comply With the Purposes and Considerations Set Forth in 18 U.S.C. § 3553(a)**

The Court has broad discretion to fashion an appropriate sentence for Mr. Mansur. A sentencing court is required to consider Guidelines ranges, but the Guidelines are "effectively advisory" and the Court is permitted "to tailor the sentence in light of other statutory concerns as well." *United States v. Booker*, 543 U.S. 220, 245 (2005). The Probation Office "recommends a sentence of three years' probation, pursuant to 18 U.S.C. § 3553(a)" because "[s]uch a sentence . . . reflects the seriousness of the offenses, and meets the objectives of fair and just punishment." Recommendation, at 2. Mr. Mansur agrees.

A. *A non-Guidelines sentence of probation reflects the nature and circumstances of the offense and the history and characteristics of the defendant*

Mr. Mansur pled guilty to a felony and accepts full responsibility for participating in a conspiracy to commit insider trading with other known and unknown defendants. However, a non-Guidelines sentence of probation is enough to reflect the nature and circumstances of the offense because:

- Mr. Mansur was a third-level remote tippee;
- Mr. Mansur did not seek out the material, nonpublic information or engage in any significant planning;
- Mr. Mansur has never met or interacted with the insider at Life Time—he did not even know the insider's name;
- Mr. Mansur never discussed the tip with first-level tippee Mr. Beshey;
- Mr. Kourtis shared the trading information with Mr. Mansur unprompted, i.e., without Mr. Mansur asking for such information;
- The trades occurred without significant planning and were of short duration—the trades occurred within days of the tip;
- Mr. Mansur did not investigate the tip or do anything to confirm its veracity—he just purchased a modest amount of options and stock without further investigation;

7

- This was a one-time event, i.e., Mr. Mansur did not engage in an organized scheme to trade on inside information over many months or involving more companies;
- Mr. Mansur did not tip anyone else;
- Mr. Mansur did not impact the decision-making of other participants; and
- There was "relatively minimal loss (measured by gains)." Recommendation, at 2.

Moreover, Mr. Mansur has no prior criminal history or history of trading misconduct. As stated by the Probation Office: "The defendant has no prior convictions, and for over the last 20 years has been employed by his father's real estate firm, where he is a senior vice president." *Id.* at 1. As detailed in letters submitted to the Court, Mr. Mansur plans to continue his long-term employment at his father's real estate company, focus on his work and his relationship with his long-time girlfriend, and continue his charitable work for the Chicago community. And, family, friends, and business colleagues all emphasize that from their experience with Mr. Mansur, the conduct here represents a marked and significant deviation from his otherwise law-abiding life. Thus, as expected, Mr. Mansur "has been extremely cooperative with the probation office," "has fully admitted his actions in the instant offense," and has had an exemplary record while out on bail. *See id.* at 1-2. Put differently, the conduct at issue here was a single act of aberrant behavior representing "a marked deviation from an otherwise law-abiding life," and thus Mr. Mansur is an ideal candidate for a downward variance. *See* U.S.S.G. § 5K.2.20(b).

In sum, based on the PSR, the nature of the offense, and Mr. Mansur's strong rehabilitation potential, there is no compelling reason to imprison Mr. Mansur or detain him with home confinement while on probation.[4] Mr. Mansur is now and forever a convicted felon; this is

---

[4] The Probation Office stated that Mr. Mansur "is not viewed as a flight risk or a danger to the community." Recommendation, at 2. For those reasons, Mr. Mansur respectfully requests that if sentenced to probation, he be allowed to travel outside of the federal judicial district without permission for work and other reasons. Moreover, Mr. Mansur respectfully requests the Court not subject him to drug testing. As provided in the PSR, Mr. Mansur does not have a history of substance abuse and he did not test positive for any substance other than cannabis, for which he has a verified prescription for his degenerative disc disease. PSR, at 11-12. Thus, "[t]his mandatory condition may

a significant and satisfactory punishment. There is nothing in Mr. Mansur's background and life history that gives any indication that Mr. Mansur will ever again pass through the criminal justice system as a defendant. Thus, a sentence of probation with conditions that satisfy the interests of justice is sufficient to deter Mr. Mansur and others from committing insider trading.

B.  *A non-Guidelines sentence of probation reflects the seriousness of the offense and meets the objectives of fair and just punishment*

Mr. Mansur's sentence must be "sufficient, but not greater than necessary" to: "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "afford adequate deterrence to criminal conduct"; "protect the public from further crimes of the defendant"; and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2). Based on these factors, the Probation Office again recommended a probationary sentence. For the reasons articulated above, Mr. Mansur agrees.

In addition, many federal jurists give downward departures in insider-trading cases like this one because the Guidelines place undue reliance on gain calculations in economic fraud cases. While Mr. Mansur made more money than co-defendants Christopher Bonvissuto, Alex Carlucci, Dimitri Kandalepas, and Chasity Clark, the Court should not place undue reliance on that one factor, especially here, where it is not related to victim loss. *See, e.g.*, *United States v. Adelson*, 441 F. Supp. 2d 506, 509 (S.D.N.Y. 2006) (Rakoff, J.) ("As many have noted, the Sentencing Guidelines, because of their arithmetic approach and also in an effort to appear 'objective,' tend to place great weight on putatively measurable quantities, such as . . . the amount of financial loss in fraud cases, without, however, explaining why it is appropriate to

---

be ameliorated or suspended by the court for any defendant if reliable sentencing information indicates a low risk of future substance abuse . . . ." *Id.* at 18.

accord such huge weight to such factors." (citation omitted)). Unlike theft or embezzlement, in insider-trading cases, the Guidelines mandate that a gain calculation be used instead of any attempt to approximate victims' losses because the "the victims and their losses are difficult if not impossible to identify." U.S.S.G. § 2B1.4 cmt. Background. In other words, the loss table started as an attempt to measure the seriousness of a theft-type fraud by the extent of the harm to the victim, but in insider-trading cases, it has led to using gain even though it may have no relationship to the harm at all—much less an equivalency. Put another way, there is no reason to conclude that trading gain is a rational indicator of degree of culpability. Indeed, relying on the trading gains in calculating the Guidelines range subjects the sentencing process to uncontrollable and unrelated market forces, such as the "vagaries of stock price movements." *See* Rajaratnam Sentencing Tr. at 31:4-11, *United States v. Rajaratnam*, No. 09-cr-1184 (S.D.N.Y. Oct. 13, 2011) (Holwell, J.) (criticizing the Guidelines because they "particularly in financial crimes can point to widely disparate sentences that very similar offenses reflect depending on the vagaries of stock price movements and other factors that can ratchet up or down the guideline gain calculation."). Many federal courts, therefore, give downward departures in insider-trading cases. *See, e.g.*, *United States v. Pendolino*, No. 13-cr-657-KSH-1 (D. N.J. May 5, 2014), ECF No. 56 (Guidelines range of 12-18 months; sentenced to one year probation); *United States v. Tocci*, No. 13-cr-10239-RWZ-1 (D. Mass. Feb. 3, 2014), ECF No. 14 (Guidelines range of 12-18 months; sentenced to one year probation).

C.  *A non-Guidelines sentence of probation will avoid unwarranted sentence disparities among defendants*

One of the factors considered in imposing a sentence is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). In the Seventh Circuit, this concern "is not one that

focuses on differences among defendants in an individual case, but rather is concerned with unjustified difference across judges or districts." *United States v. Pisman*, 443 F.3d 912, 916 (7th Cir. 2006) (citing *United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006)). A sentence more severe than probation for Mr. Mansur would create such sentence disparities because courts in insider-trading cases across the country have imposed probationary sentences for non-cooperating defendants who pled guilty with gains similar or greater than Mr. Mansur's gain of $133,326. *See, e.g.*, *United States v. Watson*, No. 15-cr-10210-NMG-1 (D. Mass. Nov. 29, 2016), ECF No. 30 (gain of $167,873; sentenced to two years' probation and $25,000 fine); *United States v. Robarge*, No. 11-cr-00802-DMC-1 (D. N.J. June 4, 2012), ECF No. 9 (gain of $232,591.91; sentenced to one year probation and $5,000 fine).

Moreover, similarly situated remote tippee co-defendants in this case, Mr. Bonvissuto, Mr. Kandalepas, and Mr. Carlucci, received deferred prosecution agreements. *See* Agreement to Defer Prosecution (Oct. 26, 2017), ECF No. 68 (Christopher Bonvissuto); Agreement to Defer Prosecution (Nov. 7, 2017), ECF No. 73 (Dimitri Kandalepas); Agreement to Defer Prosecution (Nov. 8, 2017), ECF No. 80 (Alex Carlucci). While these co-defendants received pretrial diversion, in part, because of their cooperation with the government, cooperation alone does not explain a disparity as great as that between pretrial diversion and a custodial sentence.

Moreover, Chasity Clark, a co-defendant higher in the tippee chain than Mr. Mansur, who also did not cooperate with the government, was sentenced to essentially a noncustodial sentence of 45 days' time-served and one-year supervised release. Judgment of Chasity Clark (Feb. 26, 2019), ECF No. 215. In particular, Ms. Clark admitted to conspiring with Mr. Beshey to have Mr. Bonvisutto trade Life Time securities and share profits with Mr. Beshey and Ms. Clark. Ms. Clark then delivered a portion of these profits directly to the insider. *See* Chasity

Clark Plea Agreement (Nov. 29, 2018), ECF No. 196. Ms. Clark was also a fugitive in Mexico for at least six months. In effect, Ms. Clark's sentence of time served represents time spent in custody after she was arrested in Mexico, brought back to the U.S., and before she was released under bond conditions. *See* Gov't's Sentencing Memorandum, at 5 (Feb. 14, 2019), ECF No. 211. Mr. Mansur did not coordinate his trading with any other co-defendant, did not tip anyone else, and did not provide any profits to the insider. And, unlike Ms. Clark, Mr. Mansur "kept all court appearances and has followed the terms and conditions of pretrial release." Recommendation, at 2.

We submit that weighed against Mr. Mansur's entire life, the civil resolution of his SEC case, and the sentences imposed in comparable cases, a custodial sentence is greater than necessary to achieve the sentencing purposes of 18 U.S.C. § 3553(a), including the need to achieve general deterrence and to recognize the seriousness of the offense. Instead, as recommended by the Probation Office, a sentence of probation, $30,000 fine, community service, $100 mandatory assessment, and certain conditions satisfies those sentencing objectives.

## II. A Guidelines Calculation Supports a Probationary Sentence

Mr. Mansur does not seek a Guidelines sentence; however, such a sentence (properly calculated) is not far removed from a three-year probationary sentence and thus the sentence sought does not represent a marked deviation from the Guidelines.

Mr. Mansur and the government agree that the Guidelines base offense level is eight and that Mr. Mansur's offense level is increased by eight levels because the gain resulting from the offense was $133,326, which was more than $95,000 but less than $150,000. *See* U.S.S.G. §§ 2B1.4(b)(1) and 2B1.1(b)(1)(E); Plea Agreement ¶ 9(b)(i-ii), ECF No. 221. Mr. Mansur and the government also agree that Mr. Mansur has fully accepted responsibility for his actions, as

demonstrated by the fact that the government has agreed that he is eligible for the two-point reduction in his Guidelines calculations for his acceptance of responsibility.[5] Plea Agreement ¶ 9(b)(iv), ECF No. 221. The only adjustment for which Mr. Mansur, the government, and the Probation Office disagree concerns Mr. Mansur's mitigating role.

Mr. Mansur should receive a four-level reduction for his minimal role in the offense under U.S.S.G. § 3B1.2(a). A downward adjustment for a defendant's minimal role is "based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2 cmt. n.3(C). Specifically, a four-level downward adjustment for a "minimal participant" is meant for "defendants who are plainly among *the least culpable* of those involved in the conduct of a group." *Id.* at cmt. n.4 (emphasis added). "[T]he defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." *Id.* at cmt. n.4. In the Seventh Circuit, "[a] defendant must prove his entitlement to a role reduction by a preponderance of the evidence." *United States v. Saenz*, 623 F.3d 461, 467 (7th Cir. 2010).

Under the "totality of the circumstances" and the preponderance of the evidence, Mr. Mansur should receive a four-level adjustment for having a minimal role in the Life Time insider-trading scheme. It is uncontested that as a third-level remote tippee, Mr. Mansur was not aware of every individual that received the inside information, the full context in which the insider disclosed the information, nor did he have a significant relationship with the insider-trading scheme's principal members; Mr. Beshey and the insider. *See also United States v. Mendoza*, 457 F.3d 726, 730 (7th Cir. 2006) ("One of the factors that sentencing judges should

---

5   The government also agreed that Mr. Mansur's guilty plea was timely and warrants an additional one-
    level reduction in the offense level if the Court determines the offense level to be 16 or greater prior
    to determining that Mr. Mansur is entitled to a two-level reduction for acceptance of responsibility.
    Plea Agreement ¶ 9(b)(v), ECF No. 221.

examine while assessing a defendant's role in a criminal enterprise is the defendant's relationship with the enterprise's principal members."); *see also* U.S.S.G. § 3B1.2 cmt. n.3(C)(i). Moreover, Mr. Mansur did not seek out the information and did not "participate[ ] in planning or organizing the criminal activity." *Id.* at cmt. n.3(C)(ii). Mr. Mansur did not investigate the tip he received or do anything to confirm its veracity. Mr. Mansur also was not involved in deciding who else would receive the information or how the insider would be paid for the information. For the same reasons, Mr. Mansur did not "exercise[ ] decision-making authority or influence[ ] the exercise of decision-making authority," *id.* at cmt. n.3(C)(iii), and Mr. Mansur's actions were isolated from other actors in the scheme. *See id.* at cmt. n.3(C)(iv). Finally, while Mr. Mansur received a benefit from trading on the inside information, *see id.* at cmt. n.3(C)(v), this fact does not preclude a four-level downward adjustment. *See United States v. Dingle*, 862 F.3d 607 (7th Cir. 2017) (upholding co-defendant's four-level downward adjustment in offense level for minimal role despite receiving $440,900 out of $2.6 million in fraudulent checks). In short, Mr. Mansur had a minimal role because he is among the least culpable of defendants, lacked any interaction with the scheme's principal offenders, and lacked knowledge of the activities of others.

Thus, the correct Guidelines calculation is as follows:

Base offense level for U.S.S.G. § 2B1.4(a) ........................................................................8
Gain resulting from the offense U.S.S.G. §§ 2B1.4(b)(1) and 2B1.1(b)(1)(E) ...................8
Mitigating role as minimal participant U.S.S.G. § 3B1.2...................................................(4)
Acceptance of responsibility U.S.S.G. § 3E1.1 .................................................................(2)
**Total Offense Level .....................................................................................................10**

A Total Offense Level of 10, when combined with the anticipated Criminal History Category of I, corresponds to an advisory Guidelines range of 6 to 12 months' imprisonment, in addition to any supervised release and fine the Court may impose. This Guidelines range falls

within Zone B of the Sentencing Table. Thus, a sentence of probation is authorized if "the court imposes a condition or combination of conditions requiring intermittent confinement, community confinement, or home detention." U.S.S.G. § 5B1.1(a). In other words, a three-year probationary sentence is close to the Guidelines calculated sentence, and therefore does not represent a marked variance from the Guidelines.

## CONCLUSION

For all of the foregoing reasons, Mr. Mansur respectfully submits the appended letters and requests that the Court impose a sentence of probation with conditions that satisfy the interests of justice.

Dated: May 22, 2019

Respectfully submitted,

*/s/ Stephen A. Best*

**BROWN RUDNICK LLP**

Stephen A. Best (Bar No. 428447)
601 Thirteenth Street, NW
Suite 600
Washington, DC 20005
Telephone: (202) 536-1737
Facsimile: (202) 536-1701
sbest@brownrudnick.com

Alex Lipman (Bar No. 2487395)
7 Times Square
New York, NY 10036
Telephone: (212) 209-4919
Facsimile: (212) 938-2944
alipman@brownrudnick.com

Ashley L. Baynham (Bar No. 4322665)
7 Times Square
New York, NY 10036
Telephone: (212) 209-4991
Facsimile: (212) 938-2957
abaynham@brownrudnick.com

-and-

**TETZLAFF LAW OFFICES, LLC**

Theodore Robert Tetzlaff (Bar No. 2812177)
227 W. Monroe Street
Suite 3650
Chicago, IL 60606
Telephone: (312) 574-1000
Facsimile: (312) 574-1001
ttetzlaff@tetzlafflegal.com

*Counsel for Defendant Austin C. Mansur*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 22, 2019, I electronically filed the foregoing Defendant Austin Mansur's Sentencing Memorandum with the Clerk of the U.S. District Court for the Northern District of Illinois, Eastern Division by using the CM/ECF system. All participants registered through the Court's electronic filing system will be served by the CM/ECF system as required to be served by Federal Rule of Civil Procedure 5(a).

Dated: May 22, 2019

<u>/s/ Stephen A. Best</u>
Stephen A. Best (Bar No. 428447)
601 Thirteenth Street, NW
Suite 600
Washington, DC 20005
Telephone: (202) 536-1737
Facsimile: (202) 536-1701
sbest@brownrudnick.com

*Counsel for Defendant Austin C. Mansur*